## Hawk v. Davis et ux., Appellants.

*Equity—Injunction—Digging of cesspools—Pollution of plaintiff's spring.*

On a bill in equity, praying for an injunction to restrain the defendants from using a cesspool constructed on their own land adjoining the lands of the plaintiff, whereby the water in a natural spring on the plaintiff's land was polluted and defiled, an injunction is properly granted, where it appeared that the plaintiff was in possession of a spring of clear water which was used for domestic and draining purposes, and for supplying water to a restaurant and a railroad company, and that subsequent to the construction of the cesspool on the defendant's property the water became unfit for domestic use. Where the character of the pollution was traceable directly to the drainage from the defendant's cesspool and where the State Board of Health had found it to be insanitary, and had ordered its discontinuance, it was the clear duty of the court to grant an injunction.

Argued April 11, 1921. Appeal, No. 26, April T., 1920, by defendants, from judgment of C. P. Clarion County, sitting in equity No. 2, Dec. 10, 1920, granting an injunction in the case of Elsie Jane Hawk v. Thomas Davis and Nellie Davis. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Bill in equity for injunction restraining the use of a cesspool resulting in the pollution of a spring. Before SLOAN, P. J.

The facts are stated in the opinion of the Superior Court.

The court granted the injunction as prayed for. Defendants appealed.

566     HAWK *v.* DAVIS et ux., Appellants.

*Error assigned,* among others, was the decree of the court.

*Geo. F. Whitmer,* and with him *F. J. Maffett* and *H. M. Rimer,* for appellants.

*A. A. Geary,* and with him *Don C. Corbett* and *H. E. Rugh,* for appellee.

OPINION BY ORLADY, P. J., July 14, 1921:

The plaintiff filed a bill in equity to restrain the defendants from using a cesspool constructed on their own land adjoining the lands of the plaintiff, whereby the water in a natural spring on the plaintiff's land was polluted and defiled, and no longer fit to be used for domestic purposes. An answer was filed and a hearing had before the court below, resulting in an order that the plaintiff was entitled to relief; that she had no adequate remedy at law, and directed that an injunction issue against the defendants, to cease using the cesspool for sewage purposes or placing therein any waste and refuse. Considerable testimony was taken, and while a number of incidents were disputed, there are sufficient admitted and established facts to make it the clear duty of the court to grant the injunction.

The defendants are the owners of properties adjoining, to that of the plaintiff which is considerably below the grade of the defendants. On the plaintiff's property, there was a natural spring of pure water from which she derived all of the water used in her house for drinking, cooking and other domestic uses, as well as furnishing water to two other dwelling houses, a restaurant and a railroad company for the use of passengers on the trains, from which water service she derived a substantial rental.

It is admitted that the defendants in 1917 constructed an open box vault cesspool on their property, into which was drained from the dwelling, water used for washing

of dishes and clothing, cooking and waste from house-cleaning purposes. The hole was about five feet deep, four feet square, and protected by a lining of boards around the four sides, with no protection on the bottom. The waste water was conducted into this hole by a four-inch pipe, and from near the top of it there was an outlet or overflow pipe through which the excess water flowed into an open drain by the side of a public road. After continuing its use in this manner for a short time, it was regarded as dangerous, so that the State Board of Health directed the defendants to discontinue it.

The public road is 12 to 15 feet from the vault, and 5 to 8 feet lower than its bottom. The plaintiff's property is still farther down the slope of the hillside. Soon after the cesspool on the defendants' property was constructed and used, the water in the natural spring on the plaintiff's property became offensive and rendered unfit for use. It had a foul odor and very disagreeable taste. A coating, described as a "greasy scum" would accumulate on its surface. On the days when the Davis family did their family washing it was noticed that a "soapish looking" water would enter the spring about one inch above the level of the water, and cover the water in the spring with a "soapish looking stuff" just like the water that entered into the spring from the side toward the Davis property. "It was dark looking, had a very bad smell and a rotten taste." Prior to the erection of the cesspool the water in the spring was as clear as crystal, so that the bottom could be distinctly seen. These facts are established by the testimony.

It was urged on the part of the defendants, that the evidence did not clearly establish the fact, that this pollution came solely from the cesspool on their property. It may be that there were other sources from which this natural spring may have been fouled, but it is an ascertained fact that the cesspool on the defendants' property was a substantial source of much of this polluted water, and that the water percolated from this un-

protected cesspool passing through the ground to the spring.

The loss of the rental derived from the sale of the surplus water from the spring, was a mere trifle compared with the imminent danger to the health of the occupants of the houses on the plaintiff's property, the users of the water in the public restaurant, and the passengers in the cars of a railroad company.

The plaintiff acted with reasonable promptness in complaining to the defendants of the cause of her trouble, and when no relief was given and the source of danger continued, her bill for an injunction was rightly brought.   It was a case where the swift hand of a chancellor was required to prevent dangerous health conditions.   The State Board of Health had already acted and suppressed an insanitary condition; the defendants had full control of this source of contamination; the cause was definitely ascertained; the percolation of the water of this open cesspool through the soil was demonstrated by the appearance of the soapy wash and dish water in the spring soon after it was placed in the cesspool by the defendants.

The findings of the court, that the pollution of this spring was due to the water and filth thrown into the cesspool by the defendants, and such use defiantly continued, is amply sustained by the testimony.

The decree is affirmed.   The appellee for costs.